UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JESSICA LYNN SMITH, a/k/a JESSICA )
LYNN CASTANEDA, )
 )
      Plaintiff, )
 ) No. 1:11-cv-296
v. )
 ) *Collier / Lee*
COMMISSIONER OF SOCIAL SECURITY, )
 )
      Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Jessica Lynn Smith (Castaneda) brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her supplemental security income ("SSI") and disability insurance benefits ("DIB"). Plaintiff has moved for judgment on the pleadings and Defendant has moved for summary judgment [Docs. 18, 20]. Plaintiff, who is represented in this action, alleges the Administrative Law Judge ("ALJ") erred by failing to adequately explain her right to counsel and by failing to fully develop the record for her in the absence of counsel. Plaintiff also asserts remand is necessary for consideration of new and material evidence. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 18] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 20] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

## I. ADMINISTRATIVE PROCEEDINGS

Plaintiff initially filed her applications for SSI and DIB on September 24, 2009, alleging disability as of June 17, 2008 (Transcript ("Tr.") 98-102). Plaintiff's claim was denied initially and upon reconsideration and she requested a hearing before the ALJ (Tr. 50-66). The ALJ held a hearing on February 8, 2011, during which Plaintiff was unrepresented (Tr. 40-49). The ALJ issued his decision on February 15, 2011 and determined Plaintiff was not disabled because there were jobs that existed in significant numbers in the economy that she could perform (Tr. 24-36). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-6). Plaintiff filed the instant action seeking judicial review on October 17, 2011 [Doc. 1].

## II. FACTUAL BACKGROUND

### A. Education and Background

Plaintiff was 25 as of the alleged onset date, 28 at the time of the hearing, and had graduated from high school through home schooling (Tr. 46, 115). Plaintiff testified she had been in resource classes throughout school and was pulled out of public school to be home schooled after she started high school (Tr. 46). Plaintiff testified she could not work because of depression, which started when she was 15 or 16, and anxiety; she testified that no physical problems prevented her from working (Tr. 44, 46-47). Plaintiff lived with her parents and had recently lost a baby (Tr. 45).

### B. Vocational Expert Testimony

The ALJ sought testimony from vocational expert J.D. Flynn (the "VE") during the hearing. The ALJ asked the VE to assume an individual of Plaintiff's age, education, and past relevant work experience who was limited to performing medium work that was simple and unskilled and involved

2

rare contact with the general public and only occasional contact with supervisors or co-workers (Tr. 47). The ALJ further restricted his hypothetical by asking the VE to assume the individual could react to routine changes in the workplace, sustain concentration or persistence for two hour increments during an eight-hour workday, and could complete a normal workweek (Tr. 47). The VE testified that such an individual could work as dining room attendant, with 2,913 jobs in Tennessee and 218,869 jobs regionally; a dishwasher, with 4,611 jobs in Tennessee and 277,147 jobs nationally; or a hospital food service worker, with 878 jobs in Tennessee and 59,564 jobs nationally (Tr. 47). The VE further testified a commercial cleaner job would also accommodate those restrictions, with 19,626 jobs in Tennessee and over one million jobs nationally (Tr. 48). The ALJ asked Plaintiff if she could perform any of the mentioned jobs, and Plaintiff testified there was no way she could work because of her depression, anxiety, panic attacks, and insomnia (Tr. 48).

### C. Medical Records

Records from 2002 through 2004 document that Plaintiff was depressed and had problems with anxiety; she was prescribed various medications to help with her mental conditions and was diagnosed with dysphoric disorder (Tr. 200-01). Plaintiff sought treatment with In Good Health in 2007 for her mental problems and minor physical complaints; from 2007 throughout 2008 and into 2009, Plaintiff reported depression and anxiety at a few visits and had her medication changed as necessary (Tr. 217-33). During a visit on September 4, 2009, Plaintiff was upset, crying and nervous because her ex-boyfriend was stalking her and she had an upcoming court date related to those issues; she was prescribed Valium and Citalopram (Tr. 233). On November 23, 2009, Plaintiff reported feeling much better with an improved mood and home situation, but stated she was unable to cope with working and could not make it on her own so she had to live with her parents (Tr. 234-

3

35).

On December 3, 2009, Dr. Dee Langford conducted a psychological evaluation of Plaintiff (Tr. 203-07). Plaintiff reported problems with depression, anxiety, and bipolar disorder and stated she had been fired from her last job for going to the doctor for depression (Tr. 204). Plaintiff had never been hospitalized for mental problems and currently saw a nurse practitioner every three months for her psychiatric medications (Tr. 205). Plaintiff described her recent mood as irritable and sometimes sad and reported three anxiety attacks in the last month (Tr. 205). Plaintiff routinely helped her mother clean, did laundry, watched TV, washed dishes, vacuumed, swept, and napped; she could manage her medications but had to be reminded to pay bills; she prepared simple meals when she felt like it; and she socialized with her parents, sister, and a friend (Tr. 206). Dr. Langford estimated Plaintiff was in the borderline range of intellectual functioning and could follow only simple instructions (Tr. 206). Dr. Langford noted there was some evidence Plaintiff was exaggerating her symptoms and had extremely poor self control (Tr. 206). Dr. Langford opined there was no evidence of bipolar disorder and Plaintiff instead had poor self-control and impulse control problems (Tr. 206). Dr. Langford further opined Plaintiff had moderate impairments in her short term memory, ability to sustain concentration, and long term and remote memory functioning; although Plaintiff was irritable and depressed, there was no evidence of impairments in social relating, although Plaintiff was mildly impaired in her ability to adapt to change (Tr. 206-07). Dr. Langford opined Plaintiff could follow simple written and spoken instructions and diagnosed Plaintiff with depressive disorder, not otherwise specified, impulse control disorder, not otherwise specified, and borderline intellectual functioning (Tr. 207). Plaintiff's Global Assessment of

4

Functioning ("GAF") score was 60[1] (Tr. 207). Dr. Langford filled out a check-box form outlining the impairments observed in her evaluation (Tr. 209-11).

Dr. Rudy Warren filled out a Psychiatric Review Technique form on January 26, 2010 in which he opined Plaintiff had mild limitations in her activities of daily living and moderate limitations in maintaining social functioning and concentration, persistence and pace (Tr. 239-52). Dr. Warren noted Plaintiff's allegations were partially credible based on the evidence in the record but noted that Plaintiff was possibly exaggerating symptoms during her psychological evaluation (Tr. 251). Dr. Warren filled out a Mental Residual Functional Capacity Assessment form on the same date and opined Plaintiff was moderately limited in these abilities: understanding and remembering detailed instructions, carrying out detailed instructions, completing a normal workday and workweek without interruptions from psychological symptoms, and interacting appropriately with the general public (Tr. 253-54). Dr. Warren further opined Plaintiff could remember simple and low-level detailed instructions, could concentrate for at least two hour periods during a normal workday, and could react to routine changes in the workplace (Tr. 255).

Dr. George Livingston reviewed Plaintiff's file and filled out a Mental Residual Functional Capacity Assessment form on April 5, 2010 (Tr. 257-60). Dr. Livingston opined Plaintiff was moderately limited in the same areas identified by Dr. Warren, but he also opined Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting (Tr. 257-58). Dr. Livingston opined Plaintiff could understand, remember and carry out simple 1,2,3 tasks,

---

[1] A GAF score between 41 and 50 corresponds to a "serious" psychological impairment; a score between 51 and 60 corresponds to a "moderate" impairment; and a score between 61 and 70 corresponds to a "mild" impairment. *Nowlen v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 718, 726 (E.D. Mich. 2003).

could concentrate on these tasks for at least two hours during a normal workday, could interact appropriately with supervisors and coworkers but with the general public only on a one-on-one basis, and could react to routine changes in the workplace (Tr. 259).

Plaintiff was referred to Dr. Robert Stetson at Cleveland Psychiatric and began seeing him in November 2010; during her first visit, Plaintiff reported panic and depression since age 15 or 16, a recent lost pregnancy, tearful episodes, poor motivation and sleep, and low energy (Tr. 264, 274). Dr. Stetson diagnosed Plaintiff with major depressive disorder, severe without psychotic features and panic disorder without agoraphobia; Plaintiff's GAF score was 45-50 (Tr. 274). At Plaintiff's next visit on December 8, 2010, she was improved on the increased medication and was having fewer panic attacks and a better mood, although she continued to have grieving spells for her lost daughter; her GAF score was 50-55 (Tr. 266, 273). In January 2011, Plaintiff was not doing as well, was having severe panic attacks once or twice a month, and reported wanting to sleep all the time; her mood was sad and frequently tearful and she had low motivation and energy, and her GAF score was 45-50 (Tr. 268, 272).

The following evidence relevant to Plaintiff's treatment with Dr. Stetson was submitted to the Appeals Council. Plaintiff reported doing poorly at her next session with Dr. Stetson on March 2, 2011 and described having daily crying spells, anxiety, irritability, and mood swings; she was prescribed Buspar and her GAF score was 45-50 (Tr. 271). During a session on March 30, 2011, Plaintiff reported being tearful, missing her daughter, having mood swings, and being irritable (Tr. 270). Plaintiff was prescribed Abilify and her GAF score was 45-50 (Tr. 270). Plaintiff returned on April 26, 2011 and wanted to stay on Abilify; she was still having tearful spells, mood swings, and low motivation and energy, but her panic attacks were less intense (Tr. 275). Plaintiff's GAF

6

score was again 45-50 (Tr. 275). On May 9, 2011, Dr. Stetson filled out a form and opined Plaintiff had poor or no ability to relate to coworkers, deal with the public, interact with supervisors, deal with work stressors, function independently, maintain attention and concentration, understand, remember and carry out any sort of job instructions (ranging from simple to complex), behave in an emotionally stable manner, relate predictably in social situations, or demonstrate reliability (Tr. 277-78). Plaintiff had fair abilities in following work rules, using judgment, and maintaining personal appearance (Tr. 277-78). As justification for his opinions, Dr. Stetson wrote that Plaintiff had a "global incapacity due to cognitive impairment, emotional instability, poor stress tolerance and increased irritability" (Tr. 279).

## III. ALJ'S FINDINGS

### A. Eligibility for Disability Benefits

The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

7

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**B.     ALJ's Application of the Sequential Evaluation Process**

At step one of this process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since June 17, 2008, the alleged onset date (Tr. 29). At step two, the ALJ found Plaintiff had severe impairments of depressive disorder, impulse control disorder, panic disorder with agoraphobia, borderline intellectual functioning, and obesity (Tr. 29). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x. 1 (Tr. 29-30). The ALJ noted that he specifically considered Listings 12.04 and 12.06 (Tr. 30). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform a full range of medium work, except Plaintiff was limited to simple, unskilled work that involved rare contact with the general public, occasional contact with supervisors and co-workers, and routine changes; this RFC was further limited in that Plaintiff could sustain concentration and persistence for two hour increments in an eight-hour workday, but Plaintiff could complete a normal workweek (Tr. 30). At step four, the ALJ found Plaintiff was unable to perform her past relevant work (Tr. 18-19). At step five, the ALJ found that Plaintiff was 25, a younger individual, on the alleged onset date and, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy which Plaintiff could perform (Tr. 35). This finding led to the ALJ's determination that Plaintiff was not under a disability as of June 17,

8

2008 (Tr. 36).

## IV. ANALYSIS

Plaintiff argues she was denied the right to counsel and further asserts that her case should be remanded pursuant to sentence six of 42 U.S.C. § 405(g) based on new and material evidence from Dr. Stetson because the ALJ did not appropriately fulfill his duty to develop the record for the unrepresented Plaintiff.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived).

### B. Plaintiff's Right to Counsel and Sentence Six Remand

Plaintiff argues the new evidence from Dr. Stetson warrants remand because the ALJ had a duty to develop the record and, instead, the ALJ failed to obtain additional medical evidence in support of Plaintiff's claim, held only a ten minute hearing, and failed to delve into relevant topics, such as Plaintiff's potential learning disabilities [Doc. 19 at PageID #58-59]. Plaintiff contends there is good cause for remand because the ALJ failed to obtain relevant medical evidence from Dr. Stetson that was new and material when it was his duty to develop the record for the unrepresented Plaintiff [*id.* at PageID #60]. The Commissioner argues the evidence is not material in that it would not have changed the ALJ's conclusions because the evidence is from after the ALJ's decision was issued and does not address Plaintiff's condition during the relevant time period [Doc. 21 at PageID #69-70]. In the event Plaintiff claims the evidence relates back to that time period, the

10

Commissioner argues Dr. Stetson's medical source statement is inconsistent with the treatment notes considered by the ALJ and speaks to far greater limitations than were apparent in Dr. Stetson's earlier treatment notes [*id.* at PageID #70-71]. As such, the Commissioner argues remand is not appropriate in the absence of material evidence [*id.* at PageID #71].

Claimants seeking disability benefits have a statutory right to legal representation at the hearing before the ALJ and must be informed of their right to counsel. *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986). The United States Court of Appeals for the Sixth Circuit has held the record must be scrutinized where a claimant is unrepresented by counsel, but that fact alone is not grounds for reversal or remand. *See Holden v. Califano*, 641 F.2d 405, 408 (6th Cir. 1981). Claimants may waive their right to counsel if the waiver is knowing and voluntary. *Duncan*, 801 F.2d at 855. Even if the waiver is not knowing and voluntary, however, a claimant must show that she suffered prejudice because she was unrepresented, "such as a failure by the ALJ to fully develop the administrative record." *Vaca v. Comm'r of Soc. Sec.*, 1:08-cv-653, 2010 WL 821656, at *5 (W.D. Mich. Mar. 4, 2010). "[W]e examine each case on its own merits to determine whether the ALJ failed to fully develop the record and therefore denied the claimant a full and fair hearing." *Duncan*, 801 F.2d at 856.

Although Plaintiff appears to assert an argument that the ALJ did not adequately explain her right to counsel (and presumably this failure led to an involuntary waiver), this argument is not entirely fleshed out in Plaintiff's brief beyond Plaintiff's statements that the ALJ had a duty to develop the record because she was unrepresented and an apparent argument that the ALJ should have found Plaintiff did not have the intelligence to proceed unrepresented. Plaintiff also points to the part of the transcript on this issue, claiming the ALJ's investigation into Plaintiff's waiver was

11

superficial. But a review of the transcript reveals there is nothing particularly unusual about Plaintiff's responses that would indicate her waiver of her right to counsel was involuntary or made without knowledge of her rights. Plaintiff simply responded "yes" to the ALJ's questions, and there was no indication she did not understand the questions being asked. Plaintiff's father was present at the hearing for support, so she did not attend the hearing alone, and it does not appear that she was overly nervous or otherwise unable to testify about her conditions.

Perhaps a lawyer might have elicited more detailed information about her mental conditions and extended the length of the hearing, but Plaintiff was able to testify without apparent difficulty and explained the problems that made her unable to work. Moreover, although Plaintiff claims the ALJ glossed over her educational history, Plaintiff testified she had finished high school through home schooling, and it is not apparent from the hearing transcript that Plaintiff was so patently deficient in her understanding of the proceedings that she was simply incapable of waiving her right to counsel or proceeding on her own. Perhaps the ALJ could have conducted a more extensive inquiry into Plaintiff's understanding of her rights prior to accepting her waiver, but Plaintiff appeared to have no questions about the form and was not equivocal or wavering in her affirmation that she wanted to proceed without counsel. As such, I **FIND** the ALJ did not err in his inquiry into Plaintiff's waiver and I **CONCLUDE** Plaintiff's waiver of her right to counsel was knowing and voluntary.

The majority of Plaintiff's argument appears to claim prejudice to the unrepresented Plaintiff by virtue of the ALJ's failure to develop the record as it pertains to the evidence submitted to the

12

Appeals Council from Dr. Stetson.[2] Evidence submitted to the court after the close of administrative proceedings cannot be considered for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Similarly, where the claimant presents new evidence to the Appeals Council, but the Appeals Council declines to review the ALJ's decision, that new evidence may not be considered during review on the merits. *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993). Instead, the new evidence can be considered only for purposes of remand pursuant to sentence six of 42 U.S.C. § 405(g), which authorizes the court to remand a case for further administrative proceedings "if the claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). The evidence is material "only if there is a 'reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)); *see also Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007) ("Material evidence is evidence that would likely change the Commissioner's decision"). Plaintiff bears the burden of showing that remand is appropriate under 42 U.S.C. § 405(g). *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009).

As a threshold matter, I **FIND** the evidence from Dr. Stetson is new; indeed, it concerns sessions which took place well after the hearing before the ALJ and after the ALJ issued his decision. I further **FIND** that because the evidence is so new, there was good cause for Plaintiff's

---

[2] Subsequent to the ALJ's unfavorable decision, Plaintiff obtained legal counsel who submitted additional evidence from Dr. Stetson in support of her timely request for review by the Appeals Council. Although Plaintiff speaks generally about the ALJ's failure to develop the record, there is nothing besides Dr. Stetson's additional treatment notes that Plaintiff has pointed to that should have been solicited by the ALJ, and there is nothing else apparent.

13

failure to bring it before the ALJ, as it did not exist at the time of the hearing and the ALJ's decision. However, I also **FIND** no fault on the part of the ALJ in his alleged failure to further develop the record because the ALJ could not have obtained this evidence at the time of his decision.

I **FIND** the new evidence from Dr. Stetson's treatment notes is not material. The Commissioner's argument turns on the premise that the new evidence could not have changed the ALJ's February 2011 decision because, as noted above, it concerned Plaintiff's condition post-February 2011, and it could also not relate back to her condition pre-February 2011 because Dr. Stetson's opinion was inconsistent with his findings during the sessions considered by the ALJ. I **FIND** this argument compelling.

Moreover, the post-February 2011 evidence submitted to the Appeals Council is not consistent with Dr. Stetson's treatment notes from late 2010 and early 2011, which indicate Plaintiff's medications were helping relieve her symptoms, panic attacks where less intense, her mood was better, and she attributed low energy to the cold weather. As the ALJ noted in his decision after summarizing the medical records, "I note the claimant has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in the claimant's favor, but the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms" (Tr. 31, 33-34). In the new treatment notes submitted to the Appeals Council, Plaintiff reported she was not doing as well, but much like her other treatment history indicated, her medications were being changed to find one that would work best to control her symptoms (Tr. 270-71, 275). By the last note of April 26, 2011, Plaintiff wanted to stay on her current medication and her panic attacks were less frequent, although she was still having tearful spells and low motivation and energy; Dr. Stetson noted Plaintiff was oriented, her grooming was within normal limits, and

14

her affect was less dysphoric (Tr. 275). Nonetheless, Dr. Stetson's opinion of May 2011 indicated Plaintiff had no useful ability to function in nearly all areas, including reliability, relating predictably in social situations, understanding any job instructions, interacting with coworkers or supervisors, or functioning independently (Tr. 277-79). None of these severe limitations are reflected in Plaintiff's treatment notes with Dr. Stetson, which makes Dr. Stetson's opinion wholly inconsistent with the treatment notes the ALJ considered. Thus, it is unlikely the opinion speaks to Plaintiff's condition in or before February 2011, and it therefore would not have changed the ALJ's decision.[3]

Accordingly, I **FIND** the evidence submitted to the Appeals Council would not have related back to Plaintiff's condition during the period of time the ALJ reviewed and, as such, the evidence is not material because it would not have changed the ALJ's decision. Therefore, I **CONCLUDE** that Plaintiff has not established that remand pursuant to sentence six of 42 U.S.C. § 405(g) would be appropriate. As Plaintiff has not made any other specific arguments challenging the ALJ's decision, I further **CONCLUDE** the decision of the ALJ was supported by substantial evidence.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I

---

[3] Plaintiff also makes much of the GAF score of 45-50 assessed by Dr. Stetson during many of her sessions, but the ALJ is not required to accept or give weight to any individual GAF score. *See Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006); *see also Arnold v. Astrue*, No. 2:10-cv-013, 2010 WL 5812957, at *8 (S.D. Ohio Oct. 7, 2010) ("[A] GAF score merely represents a 'snapshot' of a person's 'overall psychological functioning' at or near the time of the evaluation" and "is isolated to a relatively brief period of time").

**RECOMMEND** that:[4]

    (1)    Plaintiff's motion for judgment on the pleadings [Doc. 18] be **DENIED**.

    (2)    The Commissioner's motion for summary judgment [Doc. 20] be **GRANTED**.

    (3)    The Commissioner's decision denying benefits be **AFFIRMED**.

                                  s/ *Susan K. Lee*
                                  SUSAN K. LEE
                                  UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).