UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JESSICA LYNN SMITH, a/k/a JESSICA LYNN CASTANEDA,

Plaintiff,

v.

MICHAEL J. ASTRUE
Commissioner of Social Security

Defendant.

Case No. 1:11-CV-296

Collier/Lee

**M E M O R A N D U M**

Plaintiff Jessica Lynn Smith ("Plaintiff") brought this action on October 17, 2011, seeking judicial review of the final decision of the Commissioner of Social Security ("Defendant") denying Plaintiff a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. The Court referred the matter to United States Magistrate Judge Susan K. Lee, pursuant to 28 U.S.C. § 636(b) and in accordance with Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation ("R&R") regarding the disposition of Plaintiff's motion for judgment on the pleadings (Court File No. 18) and Defendant's motion for summary judgment (Court File No. 20). The magistrate judge filed an R&R (Court File No. 22) recommending the decision of the Commissioner be affirmed, Plaintiff's motion for judgment on the pleadings be denied (Court File No. 18), Defendant's motion for summary judgment be granted (Court File No. 20), and the case be dismissed. Plaintiff timely filed an objection to the R&R (Court File No. 23). For the following reasons, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R (Court File No. 22).

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

In September 2008, Plaintiff applied for SSI and DIB. After her claims were denied, she sought a hearing with an Administrative Law Judge ("ALJ"). On February 8, 2011, the ALJ held a hearing at which Plaintiff was unrepresented. On February 15, 2011, the ALJ issued his decision, in which he concluded Plaintiff was not disabled because there were a number of available jobs she could perform. After the Appeals Council denied her request for review, she sought judicial review in this court.

The alleged onset date in this case is June 17, 2008, when Plaintiff was twenty-five years old. She testified at the hearing she was in resource classes throughout her schooling, apparently due to learning disabilities. Although she attended public school, her parents home schooled her during high school. She has suffered depression and anxiety since she was 15 or 16, and was fired from previous employment at a day care center due to these issues. She also reported suffering from insomnia. In the months prior to the hearing, Plaintiff's daughter passed away.

The ALJ obtained testimony from J.D. Flynn, a vocational expert. The ALJ asked Flynn whether employment existed for an individual with Plaintiff's characteristics, including age, education, and work experience, who was limited by Plaintiff's psychological issues and required "simple unskilled work, rare contact with the general public, occasionally [sic] contact, can react to routine changes in the workplace, can sustain concentration or persistence for at least, for two-hour increments during an eight-hour day and complete a normal workweek." Flynn testified to the existence of a number of possible jobs, including dining room attendant, dishwasher, and

[1] The factual and procedural history of this case is thoroughly addressed in the R&R. The facts as related by the magistrate judge have not been disputed and the Court will not seek to repeat every detail of the factual background. The Court will, however, provide a relevant summary.

commercial cleaner. Plaintiff, however, testified she would be unable to perform this work due to her emotional and psychological issues.

Plaintiff's medical records corroborate her reports of some psychological disorders. From 2002 to 2004 she was prescribed medications for depression and anxiety and was diagnosed with dysphoric disorder. She continued seeking treatment and her medication was adjusted over the ensuing years as needed. Multiple doctors evaluated Plaintiff. Dr. Dee Langford evaluated Plaintiff in late 2009, assigning a Global Assessment of Functioning ("GAF") score of 60.[1] Dr. Langford reported borderline intellectual functioning but also noted Plaintiff could be exagerrating her symptoms. Dr. Rudy Warren evaluated Plaintiff shortly after Dr. Langford and filled out a number of assessments, concluding she was moderately limited in some abilities, including remembering and carrying out detailed instructions, completing a normal workday or week without impact from her symptoms, and acting appropriately with the public. Dr. George Livingston also evaluated Plaintiff and wrote a similar report to Drs. Langford and Warren. He found Plaintiff moderately limited in certain areas, but concluded she could carry out simple tasks, concentrate for at least two hours, interact appropriately with coworkers but only with the general public on a one-on-one basis, and could react to routine changes in a workplace.

Plaintiff began seeing Dr. Robert Stetson in November 2010, who diagnosed Plaintiff with major depressive disorder, severe without psychotic features. He also diagnosed Plaintiff with panic disorder without agoraphobia. He assessed a GAF score of 45-50. Over the next few months, Plaintiff continued to see Dr. Stetson, who assessed new GAF scores of 50-55 and 45-50.

---

[1] As the magistrate judge noted, a GAF score of 41 to 50 shows "serious" psychological impairment; 51 to 60 shows "moderate" impairment; and 61 to 70 shows "mild" impairment.

The ALJ concluded Plaintiff does not have any impairments that meet or equal any of the presumptively disabling impairments listed in 20 CFR Part 404, Subpart P, App'x 1. Moreover, the ALJ concluded Plaintiff had the residual functioning capacity ("RFC") to perform "medium work" limited to simple, unskilled work with rare contact with the general public, occasional contact with supervisors or co-workers, and could react to "routine changes" in the workplace. The ALJ also found Plaintiff could sustain concentration for two-hour increments in an eight-hour workday and could complete a normal workweek. The ALJ did find, however, Plaintiff was unable to perform past relevant work, which in this case was her former employment as a day care worker and a fast food worker. The ALJ then concluded "there are jobs that exist in significant numbers" that Plaintiff could perform. Accordingly, the ALJ concluded Plaintiff was not under a disability between June 17, 2008 and the date of the decision.

In March 2011, after her initial hearing with the ALJ, Dr. Stetson continued to evaluate Plaintiff, and again assigned her scores of 45-50 on multiple occasions. In May 2011, he reported she had little ability to relate to coworkers, interact with the public or her supervisors, deal with work stressors, function independently, maintain attention and concentration, understand and perform job instructions and duties, or behave appropriately. The information from Dr. Stetson beginning in March 2011 was presented to the Appeals Council, which denied her request for review.

Plaintiff then sought relief from this court, and the case was referred to the magistrate judge. Plaintiff sought remand pursuant to sentence six of 42 U.S.C. § 405(g), based on the new evidence of Dr. Stetson's subsequent evaluations of Plaintiff. The magistrate judge found Plaintiff validly waived her right to counsel at the hearing. The magistrate judge also found the evidence presented

was new, and there was good cause for failing to present it at the initial hearing. The magistrate judge found there was no fault on the part of the ALJ to develop the record because the evidence did not exist until after his decision. The magistrate judge, however, found the evidence itself was not material, because it concerns Plaintiff's condition after the ALJ's decision, rather than her condition during the relevant time period under review. The evidence did not relate back to her condition before the ALJ's decision because Dr. Stetson's opinion was inconsistent with his findings made prior to the ALJ's decision. Due to this inconsistency, the magistrate judge found it unlikely the new evidence would have changed the ALJ's decision. Plaintiff timely objected to the R&R.

## II. STANDARD OF REVIEW

This Court must conduct a de novo review of those portions of the R&R to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1). The Court's standard of review is essentially the same as the magistrate judge's – review is limited to determining if the ALJ's findings are supported by substantial evidence and if proper legal standards were used. 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). "Substantial evidence" means evidence a reasonable mind might accept to support the conclusion at issue. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is greater than a scintilla but less than a preponderance. *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Brainard*, 889 F.2d at 681. If supported by substantial evidence, the Court must affirm the ALJ's findings, even if substantial evidence also supports the opposite conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). The substantial evidence standard presupposes there is a zone of choice within which the decision makers can go either way, without interference by the

courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994). The ALJ need not discuss every aspect of the record or explain every finding at length but must "articulate with specificity reasons for the findings and conclusions that he or she makes" to facilitate meaningful judicial review. *Bailey v. Comm'r of Soc. Sec.*, No. 90-3061, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999).

**III. DISCUSSION**

Plaintiff's objection to the magistrate judge's R&R is a reiteration of the basis of her complaint: the case should be remanded to the ALJ pursuant to sentence six of 42 U.S.C. § 405(g). Plaintiff contends the magistrate judge erred when she found the new evidence is insufficiently material to justify such a remand. Plaintiff also points to two minor statements in her motion the magistrate judge did not address. For the following reasons, the Court disagrees with Plaintiff's arguments.[2]

Pursuant to 42 U.S.C. § 405(g), "The court may . . . remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Evidence is only considered "new" if it was "'not in existence or available to the claimant at the time of the administrative proceeding.'" *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (quoting *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001)). "Good cause" is demonstrated by "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing." *Id.* Evidence is only

[2] The Court does not read Plaintiff's objection to take issue with the magistrate judge's conclusion Plaintiff validly waived her right to representation at the hearing. In fact Plaintiff's original motion itself does not develop this argument, but simply mentions it in passing. Regardless, the Court agrees with the magistrate judge's conclusion Plaintiff knowingly and voluntarily waived her right to counsel.

"material" if "there 'is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id.*

The magistrate judge concluded the evidence was "new" and Plaintiff demonstrated "good cause" for failing to present it at the original proceeding. However, the magistrate judge also concluded the additional evaluations were not material. The magistrate judge reasoned that Dr. Stetson's new evaluations are not based on the period under consideration by the ALJ and do not relate back to that period because Dr. Stetson's new opinion is inconsistent with his old one. In other words, Dr. Stetson's evaluations produced after the hearing could not be material to the ALJ's determination regarding the time period before the hearing, because the change in Dr. Stetson's evaluation of Plaintiff's condition must reflect a correlative change in Plaintiff's condition itself. Because her condition changed after the ALJ announced his decision, the new evidence is immaterial to Plaintiff's condition before the ALJ's decision was filed. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 654 (6th Cir. 2009) ("[A subsequent favorable decision] might be based on a change in the claimant's condition that occurred after the initial determination or a change in the claimant's circumstances, such as entering a new age classification. Neither of these situations justifies a remand under sentence six of § 405(g)."); *Harris v. Comm'r of Soc. Sec.*, No. 3:08-CV-2219, 2010 WL 703070, at *5 (N.D. Ohio Feb. 23, 2010) ("Changes in the claimant's condition after the initial determination do not justify a remand.") (citing *Allen*, 561 F.3d at 654).

Indeed, Dr. Stetson's evaluations reflect very different visions of Plaintiff's condition. For instance, before the ALJ's decision, Dr. Stetson noted Plaintiff's prescribed medication was relieving her symptoms (Tr. 266, 273). By December 2010, Dr. Stetson noted the medication was helping Plaintiff, she had no significant mood swings, and although her energy was low she

attributed it to the cold weather (Tr. 266). Moreover, the reports consistently regarded Plaintiff's concentration and hygiene as good (Tr. 264, 266, 268). However, by the time Dr. Stetson submitted a Medical Source Statement in May 2011, three months after the ALJ's decision, his impression of her status was seriously altered. He stated she had no or poor ability to maintain concentration, and her ability to maintain her personal appearance was only fair, or "seriously limited, but not precluded" (Tr. 277-78). The May 2011 statement also rated her ability to behave in an emotionally stable manner as "poor or none," which conflicts with the late 2010 and early 2011 reports in which he consistently reported her gait as steady, her demeanor as cooperative, and her irritability as normal (Tr. 264, 266, 268). Although in November 2010 he noted Plaintiff had "mood swings but no overt mania" (Tr. 264), from that time until after the ALJ's decision his notes reflect she did not experience significant mood swings (Tr. 266, 268). In March and April, however, her mood swings apparently intensified (Tr. 270, 271). The Court is hard pressed to understand how Dr. Stetson's opinion could change so dramatically unless Plaintiff's condition itself had changed. Because it relates to a change that occurred in Plaintiff's condition after the ALJ announced his decision, the evidence could hardly create a "reasonable probability" he would have reached a different result.[3]

Plaintiff now places significant emphasis on the GAF scores Dr. Stetson assessed following the ALJ's decision. These scores rate Plaintiff's functioning as relatively low, and match two of Dr.

---

[3] Plaintiff also faults the magistrate judge's R&R for not referencing Social Security Rule 85-15, which discusses the requirements of capability to do work. However, the magistrate judge's conclusion, and the conclusion the Court reaches as well, is not whether Dr. Stetson's new evaluations would be sufficient to render Plaintiff disabled. Both decisions are premised on the evaluations' immateriality to Plaintiff's condition at the time it was being considered by the ALJ. Social Security Ruling 85-15 is not implicated because, regardless of whether Plaintiff's condition later became so severe as to render her disabled, the evaluations do not impugn the ALJ's decision based on the evidence before it.

Stetson's evaluations prior to the ALJ's decision. However, the magistrate judge correctly concluded a GAF score is not conclusive of a person's condition. *See Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007) ("A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning."); *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 416 (6th Cir. 2006) ("Moreover, the Commissioner has declined to endorse the [GAF] score for use in the Social Security and [SSI] disability programs, and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorders listings.") (quotations omitted). Rather, both the ALJ's and the magistrate judge's focus was on Plaintiff's actual symptoms, as reflected in reports prepared by evaluating medical personnel. Plaintiff's underlying symptoms, as reflected in Dr. Stetson's reports, changed between the period of time the ALJ considered, and the months succeeding his decision. The GAF scores, although often useful, do not control.

Plaintiff also cites *Keesee v. Comm'r of Soc. Sec.*, No. 2:10-CV-187, 2011 WL 2532393 (E.D. Tenn. June 6, 2011). In *Keessee*, new evidence was sufficient to establish a reasonable probability the ALJ would have assessed a plaintiff's RFC differently. The ALJ had rejected two statements from a doctor because they adopted legal conclusions, that the plaintiff was "disabled" or "unable to work," rather than discussing "specific work-related functional limitations." *Id.* at * 8. After the ALJ announced its decision, the plaintiff brought forward treatment notes from a period extending from two years before the hearing to over a year following it, as well as an updated assessment written after the ALJ's decision. These additions were found to be material and to support a remand.

Plaintiff argues this case is similar to *Keesee*. However, a key difference distinguishes these two cases: The new evidence in *Keesee* was contemporaneous with the period the ALJ considered, whereas the new evidence here relates to Plaintiff's condition after the ALJ's decision. Although the assessment in *Keessee* was written over a year following the hearing, it was "supported by [the doctor's] treatment notes," which documented the period under consideration. *Id.* at *9. While Plaintiff quotes *Keesee*'s concern with "Plaintiff's educational level, limited experience with administrative proceedings, and lack of representation," she fails to recognize these were considerations in determining whether the evidence was in fact "new," which has already been established in this case. Those factors were not considered in assessing the materiality of the new evidence.

Plaintiff makes a similar mistake when she faults the magistrate judge for failing to acknowledge two portions of her original motion. She claims the "case for remand is strengthened" by the waiver of Plaintiff's right to counsel being predicated in part on the waiver form's statement, "If you [proceed without a representative], I will obtain the relevant medical and non-medical evidence" (Tr. 96). Further, she claims, the ALJ's opinion was in part based on his observation "there is not a Medical Source Statement in the medical evidence of record that supports that the Claimant is disabled" (Tr. 34). However, the first of these statements was raised to support a finding of good cause, which the magistrate judge found. Just as the *Keesee* case is distinguishable here, so too the portion of the waiver form relied upon by Plaintiff is irrelevant because the "good cause" issue has been established in her favor.

With respect to the ALJ's failure to obtain a Medical Source Statement from Dr. Stetson, his new Medical Source Statement is immaterial for the reasons discussed above: it relates to a period

not under consideration by the ALJ. To the extent Plaintiff argues the ALJ's decision should be reversed because he did not develop the record, "reversal of an ALJ's decision is only appropriate where a claimant shows that prejudice resulted from the ALJ's failure to request additional information." *Correll v. Astrue*, No. 3:08-CV-280, 2009 WL 2601917, at *9 (E.D. Tenn. Aug. 24, 2009) (citing *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Sheffer v. Barnhart*, 45 F. App'x 644, 645-46 (9th Cir. 2002)). Here, Plaintiff cannot show prejudice because the record contained a Medical Source Statement from Dr. Langford, as well as reports from Drs. Warren and Livingston containing information similar to the information reported in a Medical Source Statement (Tr. 209; 253; 257). *See Sheffer*, 45 F. App'x at 645-46 ("A number of the doctors . . . stated opinions regarding what work, if any, [the plaintiff] could still perform. Medical source statements provide the same information. Thus, the ALJ's failure to request medical source statements did not result in any prejudice or unfairness.").

Plaintiff's objections thus fail to establish error in the magistrate judge's opinion, and the Court will adopt the R&R.

**IV. CONCLUSION**

The Court has considered Plaintiff's objections after its complete review of the record, and has found it without merit. Accordingly, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R (Court File No. 22). The Court will **DENY** Plaintiff's motion for judgment on the pleadings (Court File No. 18), and will **GRANT** Defendant's motion for summary judgment (Court File No. 20). The Court will **AFFIRM** the Commissioner's decision and will **DISMISS** the case.

**An Order shall enter.**

***/s/***
**CURTIS L. COLLIER**

**UNITED STATES DISTRICT JUDGE**